Thank you and may it please the court. My name is Lisa Blatt for Honeywell, and if I may, I'd like to reserve four minutes for rebuttal. We think the district court did four things that require reversal. First, the district court permanently enjoined Honeywell from ever attempting to settle an attorney's fee dispute under Rule 68. Second, the court awarded Honeywell to pay out-of-form Washington, D.C. rates, even though the plaintiffs have never sought to ascertain whether New Jersey counsel would be willing to do the work at issue. I thought, I know there's an affidavit from the prior case, but I thought there was also an affidavit. You can argue the affidavit wasn't adequate for that, for their finding. But wasn't there an affidavit here basically saying the local counsel, Jersey counsel, are not willing to take this case on? No, no. There's no question that, and the court said that there's no question that plaintiffs never sought to ascertain whether there was willing counsel because the plaintiffs were not obligated. Now, to be sure, the court said three things in justifying the form rate, and if you want me to jump straight into the form rate, I will. I don't want to interrupt your argument. I just had that question, and given my mind, I would have forgotten why I waited. Sure. There are three. The court said that this prior court's decision had already approved the awarding of Washington, D.C. rates for the 1995 litigation. Local counsel said he was unaware of any New Jersey willing counsel, and a plaintiff had provided an affidavit saying he thought a search would be futile. He thought, I'm sorry. He thought a search for willing New Jersey counsel would be futile. Hadn't made the search, then. I'm sorry, what? He had not made the search. No, there's no question that they haven't, and the reason why this holding should be reversed is because, in effect, the risk premium that justified the higher D.C. rates for the 1995 litigation is just not, per se, controlling for the separate 2000 follow-on litigation and, in perpetuity, all post-judgment monitoring costs. And here's why. The uncertainty and the financial risk that were facing any plaintiff's law firm, starting from scratch in 1995, are glaringly absent as of 2006. And here's why. As of 2006, two New Jersey governments had already filed two follow-on cases against Honeywell. Second, this court in 2005 had resoundingly affirmed a judgment of liability against Honeywell and upheld a sweeping permanent injunction to remediate the site. Third, the 2006 case is based on the exact same historical facts that gave rise to Honeywell's liability for the 1995 case. And fourth and finally, the New Jersey environmental community was well aware that the plaintiffs had collected millions of dollars in fees for the 1995 litigation. So the plaintiffs, in effect, shouldn't have been able to just rely on the fact that they didn't need to conduct a search because they had already been collecting 1995 rates, I mean, D.C. rates for the 1995 litigation. Now, there's no question Honeywell is not saying you should have gone out and located additional counsel. Obviously, they have a right to counsel choice. The question is, is did they have an expectation to a continued premium D.C. rate when they didn't satisfy their burden, which plaintiffs have a burden that prevailing rates are controlling unless they prove that local counsel, either lacks the necessary expertise or is unwilling to do the right, unwilling to do the work at issue. You're not even, maybe, you know, the law of the case doctrine is kind of brushing that aside. Well, law of the case and collateral estoppels is completely irrelevant to a separate case. So it just, it wasn't, it wasn't actually litigated. It wasn't before the court. It's not the same case. And in any event, there obviously was changed circumstances. Basically, it was a different case. So even for the monitoring work, now they have a better argument, obviously, for the 1995, the monitoring of that work. And we would submit that that issue, I know, was not actually litigated. And it shouldn't be law of the case because I think it's sort of common sense that when you have a consent decree and a statute that says we must pay attorney's fees, you could go out and interview a firm and find out, would you take on this work to moderate a court-appointed special master and just make sure that he is doing his job? So that's why we don't think that that is controlling either. But I don't even think there's a non-frivolous argument for the 2006 case. If I could go back to the Rule 68 issue, and then the only other two issues besides the form rate rule is the, even assuming DC rates are appropriate, we think the court erred in enhancing that based on a nationwide legal services index instead of DC-based statistics. And then the fourth issue is that the court had awarded millions of dollars of fees without conducting what we think was the thorough and searching analysis that's required by this court. What was the Rule 68 offer of judgment? You mean the number? Yeah. Just so you know, it's not supposed to be admissible, but it's about $2.3 million. And they were made over two separate times. I guess my recollection of offers of judgment were that it was filed of record. Is it not filed of record? They're filed. They're pleadings. Because I looked, I couldn't find it. Is it a specific docketed number, or was it stricken from the record? That's a good question. I don't know. I've just seen the pleadings. I actually don't know if it's in the 5,000 pages of J in this case. It should be. But... I looked at the docket sheet. I couldn't find it on the docket sheet. There was one filed, and then the plaintiffs moved to have it struck, and then another one came in. So I know there were two. And there's no question the district court has permanently enjoined and said, per se, you can't use Rule 68. And we think that's clearly wrong, because the Supreme Court in Merrick v. Chesney held that an offer of judgment may include an offer for attorney's fees without either undermining the remedial incentive to bring meritorious suits. And this court has already held that, at least for purposes of attorney fee rules, civil rights cases are indistinguishable from environmental disputes. And really the gist of this is that every single purpose that underlies Rule 68 is at its apex when the offer of judgment is made solely to resolve a dispute over attorney's fees, because attorney's fee disputes should be resolved at a court and shouldn't result in a second round of litigation. Yeah, which leads me to ask, couldn't this, what's before us, be resolved by agreement? I'm sorry? Well, the particular issues that you're disputing here, couldn't this have been resolved by agreement? Of course. I mean, we have, keep in mind that there's been $14 million of history here, $5 million of remediation has been paid without dispute, $5 million for the case, the 2006 case, has been resolved without. I mean, we have mediators, and they're very good. I agree. And I think that something could be said for saying to the district court to maybe refer some of these further disputes before the special master. The Rule 68, though, issue is a whole point. Well, that's an issue. Yeah, there's a whole point, though, of Rule 68, is to bring the parties to the table by making an offer of judgment. And, you know, when there's a demand for attorney's fees, it seems quite natural you would respond with an offer of judgment. Well, what was the district court thinking when it said you couldn't make a Rule 68? Well, what the district court was thinking, to be fair, was the district court was thinking you shouldn't be able to make an offer of judgment for the underlying injunctive relief in a citizen suit. I mean, I think that cannot be reconciled with the recent Supreme Court jurisprudence on standing. But whatever you think of that issue, there's no basis for saying you could apply it to an attorney's fee dispute. But for a citizen to have Article III standing must have a vested interest in the dispute. And the whole point of Merrick is that Rule 68 was in existence when Congress passed the civil rights laws. I'm not saying it's accurate, but I think the court reasoned that since the 1983 action, when most of these preceding cases have arisen, the plaintiff gets the money, and in a citizen's action suit, the plaintiff doesn't. There's somehow a distinction there for Rule 68 purposes. That was the logic, I think, of the joke. And the purposes just don't get you beyond the text of Rule 68, nor do they get you beyond the text of the fact that the statute defines your liability in terms of civil penalties and enforcement of the affluent limits and then attorney's fees. But if you have an Article III stake, I walk by the river, I swim by the river, you have the kind of personal and vested interest that you have to weigh under Rule 68. So I don't buy that argument at all. And even if you did buy it, it still doesn't get you a textual hook to get out of Rule 68. But again, you don't have to decide that in this case if you don't want to, because all that's before the court is an offer of judgment under Rule 68. Now, remember, the liability issues are also there. Well, we can't leave it. I mean, if we decide the Rule 68 issue, the other issue is subsumed within that. You're right. It turns on the text of the statute, and the Supreme Court is very clear in Merrick as to how we read that, the animalist text. I mean, with respect, I think you could just say an offer of judgment under attorney's fees is controlled by Merrick, and you just wouldn't say anything about an offer of judgment as to how much you're going to clean up. Like, here's the classic example. If we're in a dispute over injunctive relief, and I'm the defendant, and I say we're in a preliminary injunction stage, and I say I'll just make an offer of judgment that we make the preliminary injunction a permanent injunction. And then that has been used as an offer of judgment. And then you could debate about whether, you know, if the court just entered that one, then you would have the cost shifting under Rule 68. And I just don't think that's what you have before you now, but I do think it would go a long way, if you cited Merrick in your opinion, for the next case of going a long way of resolving the underlying injunctive relief question. So we've taken Rule 68 and form rate. If I could briefly turn to the Laffey Index, and I don't have a lot to say on that, but we think the district court erred to the extent, if you're going to have DC rates, the court erred in taking the highest possible measure of inflation based on nationwide statistics that has been overwhelmingly rejected by the district courts in DC in favor of the U.S. Attorney's Office's index or rate schedule that's based on DC inflation statistics. You think that we're really going to sit down and figure out? No. No. Well, you left yourself open there. No. Because you don't know what was coming at the end of that question. No, here's what I think, is that the last time this court said, you've got to take these Laffey Indexes seriously, you want to make sure that you really think it works in light of the prevailing rate, and you look at what the courts do in the district. And since that decision, seven different fora in the District of Columbia have rejected the enhanced index. But here's our main argument, is that just principles of fairness and consistency say, if you're going to make Honeywell pay the highest rate in DC, it's kind of ironic, and it's just unfair to then say, oh, go ahead and look at nationwide statistics. At least let them adjust the rates based on DC statistics. But I agree, basically it's a DC-based issue, and so for the Third Circuit to be opining about Judge Kessler versus every other judge in the District of Columbia is probably not the best use of your time. And I think you don't even get to that issue if you reverse under the form rate rule. How much difference in dollars is there between the parties? Between the parties in terms of the settlement or between the DC rates versus New Jersey rates or the Lafayette index? Between the parties. In this case. Oh, it's probably anywhere from 500 to 800,000. But here's the issue. We're in perpetuity. This is today. They've submitted already an $800,000 bill since you and I last spoke in the briefs. This problem's not going away. And so what we're here asking for is guidance to either get the district court engaged or to have the district court take us to the special master. And that really does, I think, raise now the attorney's fee dispute. And that is that the court below didn't conduct any kind of thorough searching analysis, much less provide something more than a terse  when it addressed Honeywell's objections in a way that this court can't conduct. Are you suggesting that under the forum rate dispute that the appropriate resolution, if we accept your argument, is to remand it for analysis? No, because the plaintiff didn't meet their burden. I think you need to remand on the attorney's fees because I can't see this court sitting down going category by category. You have the same vision I do. Look at the JA. So no. But the forum rate rule, that's it. They've had since 2006 to go interview a local council. I think it borders on laughable to think that there's not a single lawyer in New Jersey who would either take on post-judgment monitoring work where by contract you're entitled to attorney's fees and where the roadmap for the 2006 case was already laid out. And the fact that they never met their burden, never tried to, and said, we'll just rely on the same affidavit that was around at least the same substance. It's a different affidavit, but the substance is, I'm not aware of anyone in New Jersey. But that's it. We're done with that issue. But the attorney's fee dispute, even our brief said, they're entitled to X amount of fees for all those various categories. So that has to be remanded. I just can't imagine that this court would go through it. But I can walk you through some of the analysis. There were $2 million in fees over a wide swath of categories of fees, some of which mirrored what this court last time called staggering and beyond the pale. And the court said in one Senate summarily, I'm not going to second guess the staffing decisions of the Terrace Law Firm or their experts. That's just not sufficient when you have the kind of numbers that you have, when you have 100 hours for one day of deposition, when you have over 800 hours in pretrial work. Back up again. What you just said. 100 hours, or I guess there would be more than one lawyer at the deposition. There are 800 hours for 12 days of deposition. I mean, it's been a long time since I did trial work, but I can't imagine spending more than eight hours for one day of deposition. But whatever you think, we've actually offered to pay them 50 hours for one day of deposition. So no matter how you want to slice this, you just don't get there. And you don't get there with a lot of their numbers. You don't get there with the Terrace Firm. And that is one of the numbers. It just does seem like maybe you've tried this. There's a way to resolve that. And we're the special masters just for the two sides to come together and try to come to some agreement on what's, if we accept your argument. I agree. And here's the good news is the litigation is done for 2006. Then why are we here, Ms. Black? Because you have in perpetuity an obligation to pay attorney's fees for monitoring work. Right. The word in perpetuity scares me when you say something is done and then you say we have this other stuff in perpetuity. Meaning you don't need to engage in discussion about how many depositions and how many experts because let's look at the three categories of monitoring work. Lobbying. The court said that Honeywell was obligated to fund efforts to change the law. I mean, that's astounding. Honeywell's not obligated to fund lobbying efforts. And this was plaintiffs wanted to lobby to get new rulemaking passed, to get a new law passed. That has nothing to do with enforcing their consent decree under existing law. I mean, they could also go out and get a new environmental science degree and go get one at Yale. That would help them enforce the consent decree. But Honeywell doesn't have to pay for that. And the court said, I don't even know how this benefits the plaintiffs, but I'm sure it does. Well, I'm sure it does too, but not in a way that Honeywell is obligated to pay. So that's one of the fees. The second one was the Bruce Terrace oversight. Now there's the dispute between the parties. Should you have a senior partner? Can he supervise associates? Does he have to supervise other senior partners? But the court didn't even look at it. The court offered no rationale whatsoever. There's just nothing in the record that explained it. And so I think, you know, the other thing that would go a long way in resolving this is that the New Jersey rates, if there were New Jersey rates being paid... What's the difference? It's like 30%. And it's almost as much of that if you take the Laffey Index. So it's a lot. Not spelled L-A-F-F-E-Y. Laffey. L-A-F-F-E-Y. I know. So all I meant to say by the nitty gritty of how many experts, whether they needed one expert with 12 staff, whether they needed, you know, all that, that we're no longer talking about litigating the 2006 case. So we're just talking about monitoring for the special master. But again, $800,000... Time. We understand your argument. You say some time, didn't you? Yes. Okay, great. Thanks. I didn't mean to cut you off, but... You did mean to cut her off. I'm sorry. That's what you were trying to do. If we weren't getting farther down that road, I would have heard from you again. Go ahead. May it please the Court, I'm Carolyn Pravlick, and I represent all of the plaintiffs in this consolidated action. First I'd like to talk about the rates issue with regard to the first case. The issue of whether or not the rates should be Washington, D.C. rates for post-judgment monitoring work was litigated in the prior fees litigation in this case. So we have a holding... You say in this case, but you just said the first case. In the first case. Well, now the cases are total, I'm sorry. Okay, so it's not really in this case. In the first case, post-judgment monitoring work was litigated. The rates were litigated with regard to that. The district court held Washington, D.C. rates. This court affirmed. That is the law of the case with regard to... Why is that the law of the case? When it's a separate case dealing with the same matter. It's not a separate case. It's the same case. The initial case continues to have post-judgment monitoring work, and that post-judgment monitoring work is included in the application that we filed in 2009 and the application for the 2010 first half fees. So that first case, its fees in the post-judgment monitoring work continue to live. And so the prior ruling should be applied with regard to those parts of the post-judgment monitoring work. Well, that's the trick, is those parts. And how do you whack that pie up? It's all divided up in terms of how we presented the fees to the district court. So it's clear which ones go to the first case. Now, admittedly, there are some work that overlaps the two cases, but that work had to be done in the first case. So I would argue that the rates issue from the first case is controlling there. So when you have law of the case, it's then Honeywell's burden to come forward and say, we have a changed circumstance. Honeywell has not presented a changed circumstance. Instead, what they've done is they've pointed to the Jersey City lawyers in the case. Now, those lawyers, Honeywell has not demonstrated that they are working without compensation. In fact, it's a matter of public record that those lawyers get paid. But that's the crux of the issue with regard to plaintiffs, is having the willingness of counsel to work for them for free for staggering amounts of out-of-pocket expenses. These cases are very expensive, and that's included with the post-judgment monitoring. It's very expensive. We have to keep the experts going to participate in the special master process. The lack of counsel also applies to the second case. For the fees in the second case, we presented the same evidence. Is that Special Area 7 you're talking about? No. The second case is Study Areas 5 and 6. They are all adjacent properties. The second case is a much larger case because it encompasses 13 different properties. The Study Area 7 area is a much smaller geography and really only had two landowners involved in that case. So we presented the exact same evidence, including an affidavit from Professor Lloyd, who is very knowledgeable about the environmental legal community in the state of New Jersey, and he testified that there are not lawyers willing to take on cases like this. The only lawyers Honeywell points to are the Jersey City entity lawyers. They get paid for their work. That's a very, very big distinction. Think about this. Let's argue for a second. You're in a posture now where you have a consent decree. Whatever lawyer takes this case knows that the underlying remediation need has been established. The only issue is how much you're going to get paid. So you're saying there's no lawyer in New Jersey who's willing to take a case where they walk into a case with liability on their side, the need to remediate on their side, and they know whatever they do. They're not bumping up against any state politicos or federal politicos. Whatever work they do, they're going to get paid for it. The issue is how much they get paid. There's no lawyer over there who's willing to take that kind of a case. The issue is you're not getting paid for everything, first of all. So there's still risk there, and you have a situation where a lawyer walking into the case would have to learn everything about these enormous cases. Would a lawyer be willing to come in to do that without being compensated for their time? Honeywell argued they can't be compensated for that time because plaintiffs have already had counsel that learned those things. It's unlikely. No lawyer stepped forward. If anybody thought that this was a tremendous boon for lawyers, no lawyer stepped forward and said to the plaintiffs here, we'll help you out here. It just didn't happen. Is there anything on the record other than from the prior case? I know you're saying that it's the same, and I understand your argument in terms of the overlapping impact of the crime that's out there, and it's hard to separate one plot from another plot, but the extent we can separate it in this case, is there anything on the record to show that there is no counsel, there's been an inquiry, an adequate inquiry, and there's no local counsel willing to take on this case at this point? There's the affidavit of Captain Sheehan. Captain Sheehan is the Hackensack River keeper. He is constantly in the search of counsel for actions that he would like to bring. He is very well aware of the fact that there are not lawyers available to him that would take on cases of this size. The district court previously, and this court affirmed, told everyone that the plaintiffs did not need to engage in the feudal act of looking for counsel where they knew there was none. It's just not a required thing that somebody engage in a feudal act. In terms of the Laffey rates issue, that is really an issue with regard to the record in the case. Whether or not one updates the Laffey matrix with the legal services index or the consumer price index is a factual issue that has to be based on the record and the data in the particular case. This case and the Salazar case are the only cases where the record presented here has been presented. In both instances, the court found that the legal services index was a better replication of the D.C. market. Honeywell cannot rely on these other cases that were making factual determinations with regard to the records in those other cases. It can't say that. It had to present evidence here to demonstrate that the CPI was indeed a better measure to reflect the D.C. market than the legal services index. It has not done so. The things that the case law looks at in terms of geography and complexity and rate sets, those are not things that Honeywell made a record on here. First of all, with regard to geography, we demonstrated that the legal services index better matches the D.C. market than the consumer price index, which looks at a very expanded swath of the metropolitan area, taking in West Virginia. By bringing in West Virginia, it reduces the rate of change in Washington, D.C. The district court's decision was not in error. Honeywell presented no evidence to suggest otherwise. In terms of the district court's decision-making and the performance of analysis with regard to the hours here, the district court engaged in exactly the decision-making that this court requires of it. Now, the district court did not spell out every little detail because the district court adopted the plaintiff's rationale. That doesn't mean the district court needed to copy the plaintiff's rationale and put it into its decision. It was enough for the district court to reference it and say, we're adopting the plaintiff's rationale with regard to these items. Now, with regard to the Rule 68 issue, plaintiffs argued that Rule 68 does not apply on its terms to fees. In the first case, it was resolved long ago. It's not an ongoing thing, as Honeywell would suggest. It came to conclusion, it got appealed, it was subject to a cert petition. That's over with. And Honeywell's interpretation of the rule saying that it applies to fees is inconsistent with the Supreme Court's holdings in White v. New Hampshire and the Budnick case and there are a host of others where attorney's fees are taken out of the word judgment. Why wouldn't Merrick suggest otherwise? Merrick does not suggest otherwise because it is dealing with the word cost in the Rule 68. What we're talking about here is the word judgment. The word judgment gets interpreted differently than cost. Don't we have to look to the underlying statute and how terms are defined in that statute? Don't we have to look to the underlying statute and how terms are defined in that statute and aren't the terms here defined the same as they were in the statute in Merrick? Yes, they are. The word cost is defined, if not identically, it's similar enough that one would say the word cost encompasses the attorney's fees. But that's looking at the word cost in Rule 68. It's not looking at the word judgment. Plaintiff's argument is focusing on the word judgment as to whether or not the word judgment means fees, which is what Honeywell is trying to convince this court of, that the word judgment means fees. In terms of the Rules Enabling Act, Judge Brotman's analysis is a very good one with regard to the merits of citizens litigation and why it differs from civil rights litigation. The fact that you use the rules for determining the load star in a civil rights case and an environmental case is irrelevant. Because the Rules Enabling Act sits over top of Rule 68. And if Rule 68 causes an abridgment of the substantive rights in the statute, then the rule cannot be applied. That's Justice Brennan's position, but that wasn't accepted by the court. That wasn't accepted by the court in Merrick v. Chesney, a civil rights case. The underlying action in a civil rights case is very different than the underlying action in a citizen suit. A citizen suit is one where, yes, the citizen has the requisite interest for standing, but by far the bulk of the action, the interest in the action, is a public interest. And so what Judge Brotman was saying, what Judge Kavanaugh is saying in this case, is that you don't want to have the citizens essentially caving in to an offer of judgment because they can't shoulder paying the defendant's cost and giving up on very legitimate, important public interest issues. In this particular situation here, you can envision a situation where Honeywell would keep making offers of judgment if allowed to do that. And you would expect that Honeywell's offers of judgment, if plaintiffs had to accept them, that they would get lower and lower and lower over time, which is perfectly rational here. And what you'd have with the plaintiffs is the plaintiffs would be in a position where over time they would be forced to accept these lower and lower and lower offers. And the result is there's less money to be able to monitor the consent decrees here, to make sure the public is protected from the chromium that's being left in place, but is being encapsulated, if you will. It also means that as the plaintiffs march forward, we have a snowballing effect because the plaintiffs will choke back. They will be reluctant to pursue issues that are in the public interest as they march on. For example, the financial assurances, which are extremely important to make sure that these remedies last in perpetuity. If plaintiffs are choked back on the fees there, then plaintiffs will be reluctant to argue the public interest with regard to financial assurances every time that the financial assurances are encountered under the cycle that is dictated by the consent decree. Why isn't what you're arguing a very bad bezolk, which naturally flows from the text of Rule 68 and the holding and the analysis in Merrick and therefore becomes an argument to be made to the appropriate sources, the policy folks, to change the language of Rule 68? No, I don't think so, Your Honor. First off, I think the language of Rule 68 doesn't apply to attorney's fees in the first place. So Honeywell's argument is really one to be made to the rule establishers. And then the Rules Enabling Act sits over top of these rules. But then again, whether it's a substantive issue in that sense is almost certain. So that moves us back to the text and what change is wrought by the text of the rule. Is it a substantive change or not? If it is, the Rules Enabling Act. It's a substantive change in the fact that it causes the plaintiffs, who are really the litigators of the public's interest, they are acting really primarily in the public's interest. There is very little interest flowing to them. They are acting for the public and the public's interest has to be caved on by the citizens in the face of a private risk of having to pay, in this instance, Honeywell's cost. So that the plaintiffs are not able to continue the meritorious action that Congress intended of being able to enforce our environmental laws. And I submit that that is not acceptable. That that changes the substance of the actions where Congress intended that citizens would be aggressive enforcers of the environmental laws in this country. In fact, it was relying on citizens to supplement government enforcement. And we should not change that dynamic through the application of Rule 68. I see that my time has expired. I would ask the court to please affirm the district court because the district court was correct in its decision making. Thank you, Ms. Powell. Ms. Powell, you saved some time, I think. She didn't say yes. I thought you reserved a few minutes, I thought. Four, but I'm going to cut myself short because I think I went over the red light. It would be amazing if you do. I'll try. So I'll just start with the Rules Enabling Act. Rule 68 operates exactly like it's supposed to in an environmental suit, and that is just all the more so in an attorney's fee dispute. If the Honeywell makes a reasonable offer, they can turn it down or accept it. They are entitled to all reasonable attorney's fees by a district court decision. Their construction of the Rules Enabling Act is really fascinating because they're saying, although my substantive right, I'm the only one withstanding, but somehow the public's substantive right is affected. And that is a very bizarre reading of the Rules Enabling Act. So I don't think that gets them anywhere. And again, I think all you need to decide is the attorney's fees portion of this, which has nothing to do with the Rules Enabling Act. If I could just briefly go start with the law of the case. The other side made no comment how law of the case or collateral estoppel could even conceivably govern the 2006 case, and rightly so. As to the monitoring of the 2005 case, I would ask that you look at your prior opinion, and in the section on jurisdiction, the court went on to say, look, there's only a portion of this that's been resolved. There are other pending orders before the district court, and those other pending orders dealt with post-monitoring fees. But even if the court decided it, we would say that circumstances have changed. On the form rate rule, I'm just going to point you to JA 45, where the court said, Mr. Lloyd did not make an individualized assessment for purposes of Study Area 5 and 6 of whether there might have been some New Jersey firm out there willing to litigate, nor does this court believe that he or the plaintiffs were obligated to do so. And then he mentioned the futility analysis of Mr. Sheehan's affidavit, where a futility analysis, a fortiori means a search would have been futile, so he didn't conduct it. So there's really no question that the court thought a search was not conducted, and a search was not conducted. On the Laffey Index, I would just point out the irony that if they get the enhanced rate, they're getting paid more than their chances of getting that kind of rate in the District of Columbia, because every other court had rejected it. And finally, on the articulation of the thorough and searching analysis, the court would say, well, just go read our brief, because that's what the court adopted. But again, the court on the face of its opinion said, I just credit the reasonableness, I'm not going to second-guess the staffing. But at most, even if you accept their argument, then you've got to go read their brief, and you won't find it very persuasive, because it just repeats their affidavit. And I don't think that it's a very good record to read on, because it just says, we build all this because we build it all. So I don't think that's going to get them very far. Thank you. You did it. I'm amazed. Ms. Blatter is wrong. Really, phenomenal argument. Two incredible attorneys. Very well done. Very difficult case, but we thank both of you for your presentation. Well, that's for a transcript. If you check with the clerk, he can explain to you how you get that. Again, thank you. Two really incredible attorneys.